**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Violeta PASKETT, Defendant–Appellant.**

**No. 90–5196.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 10, 1992.

Alison Igoe, Asst. Federal Public Defender, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., John C. Schlesinger, Linda C. Hertz, Nina Stillman Mandel, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

BIRCH, Circuit Judge:

A jury convicted appellant Violeta Paskett of offering a bribe to a special agent of the United States Drug Enforcement Administration ("DEA"), in violation of 18 U.S.C. § 201(b)(1)(A) (1988). On this direct appeal, Paskett challenges both her conviction and her sentence. Her arguments against her conviction center on the trial court's admission of certain statements made by Paskett to the DEA agent during an alleged custodial interrogation. We reject these arguments and AFFIRM her conviction. The only statement contributing to Paskett's bribery conviction (the bribe itself) cannot be suppressed under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); those statements which might have been suppressed under *Miranda* clearly did not contribute to Paskett's conviction. With respect to Paskett's sentence, we AFFIRM her prison term. However, because the record is inadequate to review the propriety of the district court's imposition of a $100,000 fine, we VACATE that portion of Paskett's sentence and REMAND the case to the district court for a reconsideration of Paskett's ability to pay such a penalty.

## I. BACKGROUND

On September 28, 1989, several law enforcement agents were monitoring Paskett's residence in Miami. Suspicious of criminal behavior, these agents approached the apartment and greeted Paskett. After one officer explained that the agents were investigating potential money laundering activities, Paskett invited the agents into her apartment. Paskett was asked if the agents could search the residence. She voluntarily agreed, both orally and in writing.[1]

After the agents began their search, Paskett asked if she could change her clothes. For safety reasons, DEA Special Agent Renee Robinson accompanied Paskett into her bedroom. Once inside this room, Paskett started to become visibly upset and told Agent Robinson of her fear that the other agents would find "it." Agent Robinson asked Paskett if she was referring to the large stack of money wrapped in plastic bags in plain view on her bed. Paskett indicated in the affirmative and gestured to the agent that there was more money under the bedspread. Agent Robinson pulled back the covers, revealing a very large pile of money.

Agent Robinson testified at trial about the conversation which ensued after she discovered the large stashes of money:

Q. [W]hat did you do next?
A. I looked at the money and looked at Miss Paskett, and Miss Paskett offered the money to me.
Q. How did she offer it to you?
A. She told me to take the money, "Please take the money. Just let me and my son go. Just don't tell them that the money is here I won't tell anyone."
Q. She said, "Just don't tell them"?
A. Yes. She stated to me she did not want me to tell them.
Q. What did you understand this offer of money in exchange for your silence regarding the other agents to be?
A. A bribe.

R3–23.

After the bribe, Agent Robinson motioned to the other agents to come nearer to the bedroom. Agent Robinson then inquired about the source of the money, eliciting further statements from Paskett. Paskett told Agent Robinson that the money was not hers. Regarding the true owner of the money, Paskett first said that an

---

1. The voluntariness of Paskett's consent to the search is not contested on this appeal.

unknown man left the cash in her apartment, then admitted that she believed the money belonged to a gentleman named Mariano Perez. Paskett also stated that there was no other contraband in the apartment. After these statements, Paskett was given her *Miranda* warnings. Eventually, over one million dollars was found in Paskett's apartment—mainly stacked in half-inch packets of fifty and hundred dollar bills, all wrapped neatly with plastic bags and rubber bands.

Paskett was indicted on one count of bribery. Prior to her trial, Paskett moved to suppress the statements she made to Agent Robinson before receiving *Miranda* warnings. Paskett argued that the statements were inadmissible because they were elicited during a pre-warning custodial interrogation. The trial court denied Paskett's motion. The court ruled that Paskett was not in custody when she made the statements to Agent Robinson. In addition, the court concluded that Paskett's admissions were made voluntarily and not in the context of any interrogation by Agent Robinson.

A jury convicted Paskett of the bribery offense. At the sentencing hearing, the trial court heard evidence regarding Paskett's knowledge that the bribe money was the fruit of illegal narcotics trafficking. Finding that Paskett had the requisite knowledge, the court imposed an enhanced sentence of sixty months. In addition, the court ordered Paskett to pay a fine of $100,000.

## II. DISCUSSION

A. *The Admissibility Of The Statements Made To Agent Robinson*

1. The Bribe.

■ *Miranda* forbids the prosecution from using statements made by a defendant during a custodial interrogation unless the defendant had first been advised of her constitutional rights. 384 U.S. at 478–79, 86 S.Ct. at 1630. Paskett argues that the circumstances surrounding the agents'

search of her residence placed her in the custody of the agents. Therefore, she contends, the statements made during Agent Robinson's "interrogation" in the bedroom should have been suppressed by the trial court because those statements were made prior to receiving *Miranda* warnings. Without direct proof of the crime—Paskett's statement offering the money to Agent Robinson—Paskett would never have been convicted of bribery.

In *United States v. Castro*, 723 F.2d 1527 (11th Cir.1984) (per curiam), we addressed the admissibility of bribes made during custodial interrogation but before *Miranda* warnings have been given.[2] In *Castro*, a police officer approached the defendant, drew his gun, and asked " 'What in the world is going on here?' " 723 F.2d at 1529. The defendant replied, " 'You want money? We got money.' " *Id.* We held that the defendant's statement was admissible, even though it was made during custodial interrogation and prior to any *Miranda* warnings. We explained:

> This statement was totally unresponsive to [the officer's] question. It was not improperly compelled by the officer's question in a custodial setting but, on the contrary, was spontaneously volunteered by [the defendant] in a deliberate attempt to commit a totally separate crime—bribery of a law enforcement official. The safeguards of *Miranda* can not be extended that far. An attempt to commit another crime designed to interfere with a police officer's carrying out of his duties simply must be beyond the intent of *Miranda*. This spontaneously volunteered bribery attempt is admissible since it is exactly the type of statement which the Supreme Court excluded from the *Miranda* rule.

*Castro*, 723 F.2d at 1530–31 (footnote omitted).

*Castro* forecloses Paskett's attempt to exclude her bribe of Agent Robinson. Paskett's spontaneous offering of the cash to Agent Robinson constituted an independent crime. The alleged custodial nature

**2.** We assume, but do not decide, that the circumstances surrounding the search of Paskett's apartment made the bedroom questioning by Agent Robinson a custodial interrogation.

of the questioning did not force Paskett to bribe Agent Robinson; rather, Paskett voluntarily made the bribe to elude investigation and to escape arrest. Simply put, Paskett's statement in this case cannot be equated with an incriminating statement elicited by an overzealous police officer in the coercive context of custodial interrogation.

Moreover, accepting Paskett's position would render it virtually costless for suspects to attempt to bribe arresting officers. As long as the bribe occurred in the context of custodial questioning and *Miranda* warnings had yet to be given, a defendant could not be convicted of bribery because the statement constituting the offense—the bribe itself—would be inadmissible as proof of the crime. We decline to embrace this illogical outcome. As Judge Kravitch recognized in her separate opinion in *Castro*, there can be no objection "to admitting [the defendant's bribe] in a subsequent prosecution for attempted bribery" because "no person has a constitutional right to be warned of his rights before he commits a crime." 723 F.2d at 1537–38 n. 1 (Kravitch, J., concurring in part and dissenting in part). Paskett's attempt to bribe Agent Robinson was properly admitted into evidence.[3]

### 2. The Other Statements.

 The trial court not only allowed Agent Robinson to testify regarding Paskett's bribe, it also permitted testimony about Paskett's other statements in the bedroom—that the money was not hers, that she believed the money to belong to Perez, and that no other contraband could be found in the apartment. Paskett argues that the admission of these statements violated *Miranda* because Paskett was not advised of her rights before speaking with Agent Robinson. Therefore, Paskett contends, she deserves a new trial.

We need not decide the threshold issue—whether or not Agent Robinson's bedroom questions constituted custodial interrogation—because it is obvious that the trial court's admission of these statements did not prejudice Paskett's trial. "The failure to suppress statements obtained in violation of *Miranda* can be harmless error." *Owen v. Alabama*, 849 F.2d 536, 540 (11th Cir.1988). If this court is "convinced that the evidence of guilt was so overwhelming that the trier of fact would have reached the same result without the tainted evidence, then there is insufficient prejudice to mandate the invalidation of the conviction." *Cape v. Francis*, 741 F.2d 1287, 1295 (11th Cir.1984), *cert. denied*, 474 U.S. 911, 106 S.Ct. 281, 88 L.Ed.2d 245 (1985).

Our independent review of the record conclusively demonstrates that the trial court's admission of these other statements did not prejudice Paskett. These other statements did not bear at all upon the bribery charge. If these statements would have been suppressed, the jury would have known less about the story of the crime, but that would have had "no effect on the ultimate outcome" of the trial. *Id.* Given the substantial evidence of Paskett's guilt—she offered large stacks of money to Agent Robinson in exchange for the agent's silence—Paskett would have been found guilty of bribery even if the jury did not know who owned the money or whether or not there was other contraband in the apartment. *See id.* Therefore, even assuming that the trial court erred by admitting these other statements, we are convinced that such an error was harmless beyond a reasonable doubt. *See United*

**3.** Paskett also contests the admission of certain physical evidence. These claims are without merit. The videotape of the search provided the jury with probative evidence regarding Paskett's motivation for offering the bribe. Paskett's warranty deed to the apartment demonstrated Paskett's control of the searched property. Even though these items may constitute evidence of a separate crime—money laundering—they are admissible because the items are "inextricably intertwined" with the government's proof of the charged offense and necessary to complete the story of the crime. *See, e.g., United States v. Weeks*, 716 F.2d 830, 832 (11th Cir.1983) (per curiam); *United States v. McCrary*, 699 F.2d 1308, 1311 (11th Cir.1983). The other items contested by Paskett were temporarily admitted but immediately withdrawn. The trial court's cautionary instruction to the jury cured any prejudice. *United States v. Pena*, 542 F.2d 292, 294 (5th Cir.1976).

*States v. Richardson*, 764 F.2d 1514, 1528 (11th Cir.), *cert. denied*, 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985). Accordingly, her bribery conviction must stand.[4]

### B. *The Trial Court's Imposition Of A $100,000 Fine*

■ The prosecutor in this case asked the trial court to fine Paskett one million dollars. Instead, the court imposed a fine of "$100,000 to be paid immediately." R4–56. The United States Sentencing Guidelines require a fine of some amount, unless the defendant establishes that she is unable to pay any fine (even over time) or that a fine would unduly burden dependents. *United States v. Rowland*, 906 F.2d 621, 623 (11th Cir.1990). When a fine is found to be appropriate, the sentencing court must "refer to the table setting amounts of fines for different offense levels, then consider seven listed factors, including any pertinent equitable concerns, in deciding the amount of the fine to impose within the range." *Id.; see* United States Sentencing Guidelines § 5E1.2 (1991).

■ The record in this case is simply insufficient to allow this court to review the district court's decision that $100,000 was an appropriate amount to fine Paskett. The trial court imposed the $100,000 fine without an explicit discussion of the factors which might justify it. In addition, the presentence report is inconclusive. Although this report contains information regarding Paskett's automobile (which apparently was partially financed by a loan) and Paskett's property (which also was subject to a lien), we cannot determine whether Paskett "is able to pay a fine of this magnitude, either immediately or in the future." *Rowland*, 906 F.2d at 624. Finally, the fact that over one million dollars was found in Paskett's bedroom cannot independently justify a $100,000 fine. *Id.* at 623–24. Therefore, we must vacate the fine and remand the case to the district court for further consideration of the issue in light of the Sentencing Guidelines.[5]

### III. CONCLUSION

Paskett's arguments based upon *Miranda* have no merit. The bribe was properly admitted. The other statements, even if improperly admitted, made no difference to the outcome of the trial. Therefore, we AFFIRM Paskett's conviction. We also AFFIRM Paskett's prison term. However, we cannot properly review the district court's imposition of the large fine. Accordingly, we VACATE the fine and REMAND to the district court to determine if Paskett can pay $100,000.

4. Paskett's only remaining attack upon her conviction is also without merit. Paskett argues that the indictment charged her with offering the bribe in order to dissuade Agent Robinson from investigating the source of the money, but the government's proof at trial established that Paskett offered the bribe in order to prevent arrest. Therefore, Paskett contends, there was a fatal variance between the indictment and the government's proof at trial.

Whatever subtle distinction there may be between offering a bribe to prevent investigation and offering a bribe to prevent arrest, we are convinced that Paskett has not proven that such a "variance" prejudiced her substantial rights. *See United States v. Champion*, 813 F.2d 1154, 1168 (11th Cir.1987). Even if the government's proof at trial differed in this manner from the indictment, such a difference is not so great that "the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense." *United States v. Caporale*, 806 F.2d 1487, 1500 (11th Cir.1986), *cert. denied*, 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987), *and*

*cert. denied*, 483 U.S. 1021, 107 S.Ct. 3265, 97 L.Ed.2d 763 (1987). Because Paskett's sufficiency of the evidence claim depends upon her variance argument, it also fails.

5. Paskett also argues that the sentence enhancement was improper because there was inadequate proof that Paskett knew that the money related to narcotics trafficking. We will not reverse the trial court's factual finding on this matter unless it is clearly erroneous. *United States v. Smith*, 893 F.2d 1269, 1275 (11th Cir. 1990). Our review of the sentencing hearing indicates that the district court's conclusion was supported by substantial evidence. The way in which the money was being packaged in Paskett's own bedroom, the defendant's admission that the money may have been narcotics proceeds, and the other documentation found in Paskett's bedroom indicative of drug money laundering is sufficient to tip the "balance of probabilities" in favor of the government. *See United States v. Restrepo*, 832 F.2d 146, 150 (11th Cir.1987).

AFFIRMED in part, VACATED and RE-MANDED in part.

HATCHETT, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's vacation of the fine, but I would also reverse the convictions.

*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) defines custodial interrogation as "questioning initiated by law enforcement officials after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. at 1612. *Miranda* warnings are proper when "a formal arrest or restraint on freedom of movement" is present. *Oregon v. Mathiason,* 429 U.S. 492, 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977). To determine whether an arrest has occurred, the court must consider the totality of the circumstances and determine whether a reasonable person in the subject's situation would feel free to leave. *United States v. Phillips,* 812 F.2d 1355, 1360 (11th Cir.1987).

The sequence of events occurring in Paskett's apartment demonstrate that she did not feel free to leave. She felt the need to ask permission to change into more appropriate clothing *in her own home.* Additionally, Agent Robinson accompanied her into the bedroom. These events definitely show that Paskett was not free to move from room-to-room in her own home without an escort. Consequently, it is difficult to understand how the majority finds that she felt free to leave.

Admittedly, *Miranda* states "volunteered statements of any kind are not barred by the fifth amendment and their admissibility is not affected...." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. In determining voluntariness, the court must consider the totality of the circumstances. *Blackburn v. State,* 361 U.S. 199, 206, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Paskett's statements cannot be considered voluntary. The very statement the majority uses to show voluntariness, "Take the money, just let me and my son go," shows that Paskett felt coerced.

Additionally, Paskett's statements in response to Agent Robinson's questions should have been suppressed. After Paskett allegedly offered Agent Robinson a bribe, Agent Robinson continued to interrogate Paskett without explaining her *Miranda* rights. Agent Robinson further violated Paskett's rights when she sought to secure a witness to the further interrogation and proceeded to question Paskett about the money's origin, and whether more money, drugs, weapons, or contraband were in the house. Although the crime charged was completed when Paskett offered money to Agent Robinson in exchange for not arresting her, the officers did not advise Paskett of her rights until after Agent Robinson interrogated her and had attempted to secure a witness to the statements. Agent Robinson's conduct demonstrates that her questions were not intended to be routine interrogation, but were meant to produce incriminating responses. *See United States v. Glen-Archila,* 677 F.2d 809, 815 (11th Cir.1982).

Finally, the majority relies heavily upon *United States v. Castro,* 723 F.2d 1527 (11th Cir.1984) for the proposition that Paskett's statements were spontaneously volunteered. *Castro* is distinguishable, however, because it involved a spontaneous utterance. In this case, the officers had gone through the formality of obtaining a written and oral consent to search and were in the midst of investigating money laundering activities in which Paskett was a suspect. Paskett's statements were not spontaneous. Thus, the majority's reliance on *Castro* is misplaced.

For the foregoing reasons, I would vacate Paskett's conviction and sentence.