[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 7, 2008
THOMAS K. KAHN
CLERK

NO. 06-13836

D.C. Docket No. 05-00070 CR-T-23-MAP

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FIDENCIO ESTRADA,
a.k.a. Fidencio Estrada-Guerra,

Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of Florida

**(January 7, 2008)**

Before BLACK, HULL and FAY, Circuit Judges.

PER CURIAM:

Fidencio Estrada ("Estrada"), a permanent resident of the United States, and Rafael Pacheco ("Pacheco"), an agent with the United States Customs Service in Florida, agreed that Estrada would pay bribes to Pacheco in exchange for checking records on Estrada in the Treasury Enforcement Communication System ("TECS") and arranging visas for Estrada's family. Estrada was found guilty by a jury of conspiring to bribe a public official, conspiring to launder money, five counts of bribery, and ten counts of money laundering. Estrada now appeals arguing that there was insufficient evidence at trial to convict him on several counts, his convictions should be overturned because they were based on inadmissible hearsay in contravention of *Crawford v. Washington* and impermissible character evidence in contravention of Fed. R. Evid. 404, the prejudice connected with the introduction of certain evidence outweighed the probative value of that evidence, and the district court erred in finding that Pacheco was a "public official holding a high-level decision making or sensitive position." For the reasons explained below, we affirm the judgment of the district court.

**Factual Background**

In December 2000, Estrada was driving near Houston, Texas when a state trooper stopped him for traffic violations. The trooper arrested Estrada for driving without a license and insurance, and searched him, finding Pacheco's business

2

card.[1]  When the trooper inquired why Estrada had Pacheco's card, Estrada first answered that he did not know Pacheco, but later said they were friends.  The trooper then left a message for Pacheco asking him to call if it was important that Estrada had Pacheco's card.  Pacheco returned the call and told the trooper that Estrada was a "huge" informant and demanded that the trooper "let him go now."  Pacheco also told the trooper that if any money was discovered in Estrada's car, it should be considered "legit," because Estrada was "not a crook . . . not a doper.  He is an informant.  He is a goat rancher[.]"  The trooper felt something was wrong.  He told Pacheco that he would release Estrada, but instead booked him and called his supervisor.  The supervisor called a sergeant in the narcotics division, who called Pacheco again.  This time Pacheco said that Estrada was a "very very good" informant of his who had assisted in "many, many, many cases" and had provided information in "numerous investigations."

After conducting a more thorough investigation, it was discovered that various family members and friends of Estrada in the Mexico-Texas border area had sent Pacheco several thousand-dollar-plus wire transfers while he was in

---

[1] Previously, on August 14, 2000, a Texas trooper stopped a car occupied by Estrada, his brother Eradio Estrada, and a third man.  During a consented search, the trooper found approximately $75,000 in a portfolio inside a brown paper bag.  All three denied ownership of the money.

Tampa, Florida, and stationed in Puerto Rico. Pacheco had cashed these transfers and deposited most of the money in his personal bank accounts, keeping some in cash.

On February 3, 2000, Santos Ramiro Maldonado ("Maldonado"), Estrada's acquaintance, sent $1,400 through Western Union from Houston, Texas to Pacheco in Tampa. Maldonado testified that Estrada gave him money to send to someone in Florida.[2] It was also discovered that on February 15, 2000, Pacheco accessed the TECS[3] to check for records on Estrada. He searched for Estrada under two aliases and viewed records for those aliases in the NCIC database, which lists outstanding warrants against a person.

On February 25, 2000, Maldonado again sent $1,400 to Pacheco in Tampa, from Rio Grande, Texas via Western Union. Pacheco deposited the money into his personal checking accounts a few days later. Then on April 2, 2000, Raul Razo ("Razo"), another of Estrada's acquaintances from Mexico, sent Pacheco, who was temporarily stationed in Puerto Rico, $1,500. Razo testified that Estrada gave him the money to send to someone in Puerto Rico. Pacheco cashed the

---

[2] On the same day, Pacheco picked up the money in two checks, and cashed them at the transfer point. He then made two deposits of $700 each into his personal checking account.

[3] TECS is a system of databases used for criminal investigations and it is illegal for law enforcement to use the TECS for personal reasons. *See* 18 U.S.C. § 1030 (West 2007).

checks at the transfer point.

On May 2, 2000, Pacheco contacted a customs agent he knew who was stationed in Mexico, to help get visas for Estrada and Estrada's family. Pacheco commented to the agent that Estrada was an informant who had been "extremely productive" for Pacheco's agency in Florida. The agent told Pacheco that he needed a memorandum documenting Estrada's assistance. Pacheco sent him a handwritten note. The agent responded that the note was unacceptable and that he needed a memorandum from Pacheco's supervisor. Pacheco then sent a memorandum made by him, not his supervisor. In return, the agent communicated to Pacheco that Estrada and his family needed to go to the agent's office in Mexico with the pertinent documents so that he could recommend that they receive visas. Estrada's family members showed up, but Estrada did not. Pacheco told the agent that Estrada was in Florida and would come in later. On May 19, 2000, visas were issued to Estrada's family members. The agent later learned that Estrada was already a permanent resident of the United States.[4]

On September 1, 2000 and October 11, 2000, an individual showing Eradio Estrada's ("Eradio") identification sent $1,000 to Pacheco through Western Union.

---

[4] If this information had been known, it would have weighed against granting Estrada's family members visas, because relatives of permanent residents are likely to abandon their country of residence and join their permanent resident relative in the United States.

Pacheco cashed the first check and deposited the second into his personal checking account. On September 14, October 11, and December 12, 2000, Pacheco again conducted numerous TECS queries regarding Estrada.

On November 27, 2000, an individual showing Manuel Ortiz's ("Ortiz") identification[5] sent $1,800 from Angleton, Texas, to Pacheco in Tampa through Western Union. Pacheco cashed the check and deposited $1,700 cash into his personal checking account. Ortiz was later found with Estrada's contact numbers on him.

At trial, an agent with the Bureau of Immigration Customs Enforcement[6] testified that Estrada was not and never had been an informant for the United States customs agencies. In February 2005, a grand jury in the Middle District of Florida indicted Estrada for conspiring to bribe a public official, in violation of 18 U.S.C. § 201; conspiring to launder money, in violation of 18 U.S.C. § 1956(h); five counts of bribery in violation of 18 U.S.C. § 201; and ten counts of money laundering. A jury found Estrada guilty on all counts. The district court sentenced him to forty-one months' imprisonment, to be followed by thirty-six months'

---

[5] This same identification was used in December 1999 to send $1,500 via Western Union to Pacheco in Tampa.

[6] This is one of the successor agencies to the United States Customs Service.

supervised release.[7]  This appeal follows.

## Discussion

I. *Estrada's Motion for Judgment of Acquittal Based on Insufficient Evidence*

We review the denial of a motion for a judgment of acquittal based on the sufficiency of the evidence *de novo*, and view the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) (citations omitted).

Estrada argues that the United States did not introduce direct evidence in the form of eyewitness testimony or sufficient circumstantial evidence to connect him

---

[7] Pacheco was convicted in a separate proceeding for conspiracy to commit bribery of a public official in violation of 18 U.S.C. § 371 (Count 1); being a public official receiving and accepting bribes in return for being influenced in the performance of his official duties in violation of 18 U.S.C. §§ 201(b)(2)(A)(B) and (C) (Counts 2 through 6); knowingly engaging in misleading conduct toward another person with the intent to hinder, delay, or prevent communication to a law enforcement officer of the United States regarding the commission of a federal offense in violation of 18 U.S.C. § 1512(b)(3) (Count 12); conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) (Count 13); money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and 2 (Counts 14 through 23); unlawfully accessing restricted federal computer databases for financial gain and in furtherance of other criminal acts, including bribery, in violation of 18 U.S.C. § 1030(a)(2)(B) (Counts 24 through 29); obstruction of justice in violation of 18 U.S.C. §§ 1503(a), 1503(b)(3), and 18 U.S.C. § 2 (Count 30); and false statements in violation of 18 U.S.C. § 1001(a)(2) (Counts 31 and 32).  He was sentenced to 87 months' imprisonment as to counts 2- 6, 12, 13- 23, and 30; and 60 months' imprisonment as to counts 1, 24-29, 31 and 32; all such terms to run concurrently.  Upon release from imprisonment, Pacheco will be on supervised release for a term of 36 months as to counts 1-6, and counts 12-32; all such terms to run concurrently.  Pacheco is also to pay $2,700 as a criminal monetary penalty and is personally liable for a forfeiture money judgment in the amount of $17,400.

Pacheco was not called as a witness in this trial of Estrada.

7

to the bribery transactions. We disagree.

The United States provided direct evidence in the form of eyewitness testimony from Maldonado and Razo, linking Estrada to the Maldonado and Razo transfers. In addition, the circumstantial evidence was sufficient to establish a pattern of bribes from Estrada to Pacheco that occurred (1) from Western Union offices (2) near the Texas-Mexico border (3) for amounts of at least $1,000 (4) sent by Estrada's friends and family members (5) directly to Pacheco wherever he was stationed. The Eradio and Ortiz transfers fit this pattern. The transfers came from Western Union offices near the Texas-Mexico border and were for amounts similar to the previous bribes. The transfers were sent by persons close to Estrada. Both Eradio and Ortiz were found with Estrada's contact numbers. Estrada was in the car with Eradio when the trooper found $75,000 that triggered the September TECS check on Estrada. Finally, the money transfers went directly to Pacheco. This pattern provides strong circumstantial evidence that Estrada was directly involved in the Eradio and Ortiz transfers as well as the previous transfers. Therefore, Estrada was properly found to be directly connected to all the bribery transactions.

## II. *Evidentiary Rulings*

We review evidentiary rulings for abuse of discretion. *See General Elec.*

*Co. v. Joiner*, 522 U.S. 136, 141-42, 118 S.Ct. 512, 517 (1997). Estrada argues that the district court violated his Sixth Amendment rights as set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), and abused its discretion under Fed. R. Evid. 404(b) by admitting the TECS records and NCIC screen images into evidence. However, the only entries the jury saw were those contained on the pages published during witness testimony.[8] Furthermore, only one of the pages of the TECS exhibits was published to the jury and it contained a single purportedly prejudicial entry: "[S]ubject is an associate of Bruno Amador Pena-Trevino. Estrada Guerra is suspected of narcotic trafficking."

The Confrontation Clause does not apply in this situation because it "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. at 1369 n.9 (citation omitted). Because the entry was not admitted for its truth, but to show the jury exactly what Estrada was purchasing with his bribes to Pacheco, Estrada's argument cannot prevail. The fact that the entries existed was introduced to establish Estrada's motive for the bribery. The district court explained this to the

---

[8] At the end of trial, the United States voluntarily offered to withhold the original TECS exhibits, suggesting that the court send back for jury deliberations only those pages that were already published to the jury or that it withhold the exhibits unless the jury asked for them. The court instructed a court officer not to take the exhibits back to the jury for deliberations. The United States brought the original exhibits to the counsel table to avoid any portion entering the jury room. The jury never asked for the exhibits.

jury and specifically instructed them that they could not consider the TECS entries for their truth, but solely for their existence. Consequently, Estrada suffered no Sixth Amendment Confrontation Clause violation and his *Crawford* claim fails.

Estrada's 404(b) claim also fails because the district court did not admit the TECS entry for its truth. Rule 404(b) excludes some evidence of "prior bad acts" because the evidence can be unfairly prejudicial to the defendant by putting his character into a questionable position instead of proving his current crime. *See generally Old Chief v. United States*, 519 U.S. 172, 181-82, 117 S.Ct. 644, 650-51 (1997) (state may not show defendant's prior trouble with the law because it weighs too much with the jury as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge). However, the district court specifically instructed the jury that it should not consider the entry for its truth. Pursuant to the court's instructions, a reasonable jury would not have used the entry as evidence that Estrada actually had committed a prior bad act. *See Francis v. Franklin*, 471 U.S. 307, 324 n.9, 105 S. Ct. 1965, 1976 n.9 (1985).

Furthermore, the TECS entry was not excludable under Rule 404(b) because it was intrinsic evidence attributable to Estrada's current offenses. Rule 404(b) is not applicable "where the evidence concerns the context, motive, and set-up of the crime and is linked in time and circumstances with the charged crime, or forms an

10

integral and natural part of an account of the crime, or is necessary to complete the story of the crime for the jury." *United States v. Smith,* 122 F.3d 1355, 1359 (11th Cir. 1997). Estrada ordered others to send large amounts of money to Pacheco, in order for Pacheco to provide Estrada with TECS information. If there had been no information on the TECS system involving Estrada, or the information was not harmful to him, there would have been no reason for Estrada to continuously send money to Pacheco. It was logical for the Government to show the jury that there was some information about Estrada in the TECS system that Estrada would be interested in, regardless of its truth. Under these circumstances, the evidence was admissible under Rule 404(b). *See United States v. Paskett*, 950 F.2d 705, 708 n.3 (11th Cir. 1992) (holding that evidence of defendant's past money laundering was admissible under Rule 404(b) because money laundering activities were motive for the alleged bribe and hence "'inextricably intertwined' with the government's proof of the charged offense and necessary to complete the story of the crime"). Thus, the TECS entry was properly admitted and there was no error.

Estrada also argues that the district court abused its discretion under Rule 404(b) by admitting testimony about the traffic stop during which, pursuant to a consented search, the trooper found approximately $75,000 in the car in which Estrada was riding. Because this evidence triggered subsequent bribes to Pacheco,

it is intertwined with Estrada's crimes and admissible to paint the whole picture of his offenses. We find no abuse of discretion in these evidentiary rulings.

III. *Sentencing Enhancement for Bribery of an Official in a "Sensitive" Position*

We review the district court's interpretation of the sentencing guidelines *de novo. See United States v. Jordi*, 418 F.3d 1212, 1214 (11th Cir. 2005).

Estrada complains that the district court should not have applied a guideline enhancement for bribery of a public official in a "sensitive" position, arguing that Pacheco was not a "high-level decision-maker" pursuant to U.S.S.G. § 2C1.1(b)(2)(B) (2000).[9] We conclude that the district court correctly enhanced Estrada's advisory guidelines offense level pursuant to U.S.S.G. §2C1.1(b)(2)(B) (2000). That section requires the district court to increase the offense level if the offense "involved a payment for the purposes of influencing an elected official or any official holding a high-level decision-making or sensitive position." The

---

[9] The 2000 edition of the sentencing guidelines was used to calculate the PSI report. In 2004, the text of § 2C1.1(b)(2)(B) was amended and became § 2C1.1(b)(3), which now provides that the enhancement applies "[i]f the offense involved an elected public official or any public official in a high-level decision-making or sensitive position." U.S.S.G. § 2C1(b)(3). Although the new § 2C1.1(b)(3) does not contain the requirement that the offense involved "a payment for the purpose of influencing" an official, it did not alter the phrase "high-level decision-making or sensitive position," which is the language at issue here.

Further, the 2004 amendments to the application notes of former U.S.S.G. § 2C1.1(b)(2)(B) were intended to clarify the meaning of "high-level decision-making or sensitive position." *See* U.S.S.G. Amend. 666. It is well-settled in this Court that amendments to the guidelines commentary are clarifying amendments and that clarifying amendments to the guidelines apply retroactively. *United States v. Armstrong*, 347 F.3d 905, 908 & n.6 (11th Cir. 2003).

12

commentary gives as examples of an official holding a "sensitive" position– "a juror, a law enforcement officer, an election official, and any other similarly situated individual." U.S.S.G. Amend. 666 (codified at U.S.S.G. § 2C1.1(b)(3) (2004), comment. n.4(B)). Pacheco was clearly a "law enforcement officer." Therefore, because the evidence at trial established that Estrada bribed a law enforcement official who had access to sensitive information, the district court did not err in applying the U.S.S.G. §2C1.1(b)(2)(B) (2000) enhancement.[10]

IV. *The "Reasonableness" of Estrada's Sentence*

We review sentences for unreasonableness. *See United States v. Booker*, 543 U.S. 220 (2005). We also normally review a claim of substantive unreasonableness by reviewing the sentence in its entirety with deference in light of the factors in 18 U.S.C. § 3553(a). *See United States v. Williams*, 456 F.3d 1353, 1363 (11th Cir. 2006). However, Estrada did not object to his sentence as unreasonable in the district court. In this Circuit, if a defendant is offered the opportunity to object at sentencing and fails to do so, "objections to the sentence will be waived for purposes of appeal." *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir. 1990), *overruled on other grounds by United States v. Morrill*,

---

[10] The district court enhanced the guideline offense level because Pacheco was in a "sensitive" position as opposed to a "high-level decision-making position," and Estrada bribed him precisely because of his position.

13

984 F.2d 1136 (11th Cir. 1993) (en banc). As an exception to waiver, "we will only consider [sentence] objections raised for the first time on appeal under the plain error doctrine to avoid 'manifest injustice.'" *United States v. Newsome*, 998 F.2d 1571, 1579 (11th Cir. 1993) (quoting *United States v. Neely*, 979 F.2d 1522, 1523 (11th Cir. 1992)). The government argues that plain error review should apply because Estrada did not object to his sentence as unreasonable in the district court. This Court has not yet applied plain error review to a question of reasonableness of a sentence. We need not decide here whether or how plain error applies because, even under a reasonableness standard, Estrada's sentence appeal fails.

Estrada mainly argues that it was incorrect for the district court to have used the advisory guidelines range it did when applying the sentencing factors set forth in 18 U.S.C. § 3553 because it incorrectly calculated that range by enhancing Estrada's sentence under U.S.S.G. § 2C1.1(b)(2)(B) (2000). We rejected this argument in part III above.

Thus, the only remaining argument is that based upon the testimony of several family members that Estrada was a "good man," the court should have sentenced him to less time because he needs to provide for his family financially. We disagree. "The weight to be accorded to any given § 3553(a) factor is a matter

14

committed to the sound discretion of the district court." *Williams*, 456 F.3d at 1363. The trial court heard the witnesses, evaluated the testimony, and carefully considered all of the surrounding circumstances. The forty-one months' sentence was not unreasonable.

## Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court.