2003 WY 24

**Robert GUNN, Appellant (Defendant),**

**v.**

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 02–39.**

Supreme Court of Wyoming.

Feb. 26, 2003.

Kenneth M. Koski, Public Defender; Donna D. Domonkos, Appellate Counsel; Ryan R. Roden, Senior Assistant Appellate Counsel, Representing Appellant.

Hoke MacMillan, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Rebecca A. Lewis, Special Assistant Attorney General, Representing Appellee.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

VOIGT, Justice.

[¶ 1]   Robert Gunn (Gunn) entered a conditional plea of guilty to an amended charge of indecent liberties with a child, a felony, in violation of Wyo. Stat. Ann. § 14–3–105 (LexisNexis 2001).   Gunn appeals the Judgment and Sentence of the district court sentencing him to a term of not less than three years and not more than five years in the state penitentiary.   The district court suspended the penitentiary term on the condition that Gunn serve six consecutive weekends in the Natrona County Detention Center and complete four years of supervised probation.   We affirm.

## ISSUES

[¶ 2]   The issues presented on appeal are:

*ISSUE I*

Whether statements made by [Gunn] at his home were involuntary and in violation of his *Miranda* rights under the Fifth and Fourteenth Amendments to the United [States] Constitution and Article 1 § 6 and Article 1 § 11 of the Wyoming Constitution?

*ISSUE II*

Whether statements made by [Gunn] to [a] deputy sheriff at the sheriff's office were involuntary and in violation of [his] rights

under the Fifth and Fourteenth Amendments to the United [States] Constitution and Article[ ] 1 §§ 6 and 11 of the Wyoming Constitution?

## FACTS

[¶ 3] On June 25, 2001, Investigator Davis (Davis) arrived at Gunn's residence and questioned him about an alleged sexual assault in which he was the suspect. Davis did not advise Gunn of his *Miranda* rights, and Gunn made an incriminating statement. Davis then told Gunn that if he would accompany Davis to the sheriff's department and discuss the alleged crime and his involvement, Davis would thereafter return Gunn to his home. Gunn concedes that his *Miranda* rights were given to him with respect to the statements made at the sheriff's department.

[¶ 4] An Information filed on June 25, 2001, charged Gunn with two counts of third-degree sexual assault in violation of Wyo. Stat. Ann. § 6–2–304(a)(i) (LexisNexis 2001). The State amended the Information in November 2001 to charge Gunn with unlawfully and knowingly taking immodest, immoral, or indecent liberties with a child, who was under the age of sixteen, while Gunn was at least four years older than the victim, in violation of Wyo. Stat. Ann. § 14–3–105. Gunn changed his plea to guilty, pursuant to a conditional plea agreement with the State, under which he reserved the right to appeal the district court's denial of the motion to suppress his incriminating statements.

## STANDARD OF REVIEW

[¶ 5] The district court denied Gunn's Motion to Suppress. Our standard of review of the denial of such a motion is as follows:

"When we review a district court's ruling on a motion to suppress evidence, we do not interfere with the findings of fact unless they are clearly erroneous. When the district court has not made specific findings of fact, we will uphold its general ruling if the ruling is supportable by any reasonable view of the evidence. We consider the evidence in the light most favorable to the district court's ruling because

of the district court's ability to assess 'the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions' at the hearing on the motion."

*Meek v. State,* 2002 WY 1, ¶ 8, 37 P.3d 1279, 1282 (Wyo.2002) (*quoting Frederick v. State,* 981 P.2d 494, 497 (Wyo.1999)). Voluntariness, however, is a question of law; thus, it is reviewed *de novo. Lewis v. State,* 2002 WY 92, ¶ 18, 48 P.3d 1063, 1068 (Wyo.2002).

## DISCUSSION

### STATEMENT AT HOME

[¶ 6] Gunn contends that he was in "custody" when Davis arrived at his home, separated him from his live-in companion, took him outside, and asked him questions that elicited an incriminating response. Gunn claims that Davis did not advise him that he was free to leave or that he had the right not to speak to the officers. Gunn contends that because he was deprived of his freedom in a significant way and was subsequently interrogated without the warnings required by *Miranda,* the incriminating statement should be suppressed. In addition, Gunn argues that even if *Miranda* was not required, his statement to police was not voluntary as required by the federal and state constitutions.

[¶ 7] Statements made by a suspect during custodial interrogation are admissible into evidence, providing certain advisements are made. *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements made during custodial interrogation must be excluded upon a showing that the defendant was not advised of his *Miranda* rights. *Dickerson v. United States,* 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), *cert. denied,* 535 U.S. 1106, 122 S.Ct. 2315, 152 L.Ed.2d 1069 (2002). In *Dickerson,* 530 U.S. at 435, 120 S.Ct. 2326, the United States Supreme Court stated:

Accordingly, we laid down "concrete constitutional guidelines for law enforcement agencies and courts to follow." ... Those guidelines established that the admissibility in evidence of any statement given dur-

ing custodial interrogation of a suspect would depend on whether the police provided the suspect with four warnings. These warnings (which have come to be known colloquially as *"Miranda* rights") are: a suspect "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires."

[¶ 8] Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda,* 384 U.S. at 444, 86 S.Ct. 1602. *See also Glass v. State,* 853 P.2d 972, 976 (Wyo. 1993) and *Wunder v. State,* 705 P.2d 333, 334 (Wyo.1985). Neither general on-the-scene questioning as to facts surrounding a crime nor statements volunteered freely without compelling influences are considered to fall within this definition. *Miranda,* 384 U.S. at 477–78, 86 S.Ct. 1602.

[¶ 9] The totality of the circumstances must be considered in determining whether a suspect is in custody when questioned. In *Beckwith v. United States,* 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976), the United States Supreme Court rejected the notion that a person who is the "focus" of a criminal investigation is, by that fact, "in custody." The United States Supreme Court made clear that *"Miranda* implicitly defined 'focus,' for its purposes, as 'questioning initiated by law enforcement officers **after** a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *Id.* at 347, 96 S.Ct. 1612 (*quoting Miranda,* 384 U.S. at 444, 86 S.Ct. 1602) (emphasis in original). The proper inquiry is to ask "whether a reasonable man in Appellant's position would have considered himself to be in police custody." *Glass,* 853 P.2d at 976.

[¶ 10] Several factors are relevant to be considered in determining whether a restraint is "custodial" for *Miranda* purposes. Among these are: (1) whether a suspect is questioned in familiar or neutral surroundings; (2) the number of police officers present; (3) the degree of physical restraint and whether it is comparable to those associated with a formal arrest; and (4) the duration and character of the interrogation. *See* 2 Wayne R. LaFave, Jerold H. Israel and Nancy J. King, *Criminal Procedure* § 6.6(c) at 527 (2nd ed.1999); *see also Wunder,* 705 P.2d at 335. The nature of the interrogator, the nature of the suspect, the time and place of the interrogation, the progress of the investigation at the time of the interrogation, whether the suspect is informed that his detention would not be temporary, and the elapsed amount of time between questioning and the arrest may be important factors as well. *Wunder,* 705 P.2d at 335; J.F. Ghent, Annotation, *What Constitutes "Custodial Interrogation" Within Rule of Miranda v. Arizona Requiring that Suspect be Informed of His Federal Constitutional Rights Before Custodial Interrogation,* 31 A.L.R.3d 565 (1970). No one factor alone will necessarily establish custody for *Miranda* purposes, and not all factors will be relevant to a given case.

[¶ 11] The giving of *Miranda* warnings, by itself, does not suffice to render a statement admissible. The Fifth and Fourteenth Amendments to the United States Constitution, and Wyo. Const. art. 1, §§ 6 and 11, require that statements also must be voluntary. *Lewis,* 2002 WY 92, ¶ 18, 48 P.3d at 1068; *Mitchell v. State,* 982 P.2d 717, 721 (Wyo.1999); *Doyle v. State,* 954 P.2d 969, 971–72 (Wyo.1998).

"To be voluntary, the defendant's statements must result from 'free and deliberate choice rather than intimidation, coercion, or deception.' *Madrid v. State,* 910 P.2d 1340, 1344 (Wyo.1996) Because we presume a defendant's statements to be involuntary, the burden rests on the State to show, by a preponderance of the evidence, that the defendant's statements were voluntary. *[State v.] Evans,* 944 P.2d [1120] at 1126–27 [ (Wyo.1997) ]. Once the State has met its burden and rebutted the presumption of involuntariness, the defendant may be required to present evidence demonstrating the involuntariness of his

statements. *Id.* at 1126. If such statements resulted from coercion, then the statements are inadmissible at trial for any purpose because their validity is suspect. *Id.* at 1125."

*Lewis,* 2002 WY 92, ¶ 18, 48 P.3d at 1068 (*quoting Mitchell,* 982 P.2d at 721). We look to the totality of the circumstances to determine if the defendant's statements were voluntary. *Lewis,* 2002 WY 92, ¶ 18, 48 P.3d at 1068 (*quoting Mitchell,* 982 P.2d at 721).

■■■ [¶ 12] Factors a trial court may consider in determining whether statements were made voluntarily include:

"[T]he atmosphere and events surrounding the elicitation of the statement, such as the use of violence, threats, promises, improper influence or official misconduct, the conduct of the defendant before and during the interrogation and the defendant's mental condition at the time the statement is made[,] . . . whether the defendant was in custody or was free to leave and was aware of the situation; whether *Miranda* warnings were given prior to any interrogation and whether the defendant understood and waived *Miranda* rights; whether the defendant had the opportunity to confer with counsel or anyone else prior to the interrogation; whether the challenged statement was made during the course of an interrogation or instead was volunteered; whether any overt or implied threat or promise was directed to the defendant; the method and style employed by the interrogator in questioning the defendant and the length and place of the interrogation; and the defendant's mental and physical condition immediately prior to and during the interrogation, as well as educational background, employment status, and prior experience with law enforcement and the criminal justice system."

*Simmers v. State,* 943 P.2d 1189, 1195–96 (Wyo.1997) (*quoting State v. Evans,* 944 P.2d 1120, 1125–26 (Wyo.1997); *People v. Gennings,* 808 P.2d 839, 845 (Colo.1991) and *People v. Pearson,* 725 P.2d 782, 783 (Colo. 1986)).

[¶ 13] In the instant case, Gunn was questioned at home while one investigator and two deputy sheriffs were at the residence. Davis testified that he went to Gunn's residence, identified himself, told Gunn why he was there, and asked Gunn to step outside and speak privately with Davis about the alleged sexual assault. Once outside, Davis and Gunn walked down the front yard toward Gunn's truck and stood beside it. Deputy Walters was in close proximity and Deputy Frimml was inside the residence with Davis' live-in companion, Eva Bibb (Bibb). Davis was standing between Gunn and his residence. No *Miranda* warnings were given to Gunn at this time.

[¶ 14] Gunn initially denied any knowledge of the matter, but then said that he did not rape the minor; she "wanted it." Davis then asked Gunn if he would go to the sheriff's office and make a statement, which Gunn agreed to do. The entire conversation between Davis and Gunn lasted only ten to fifteen minutes, and Davis did not arrest or handcuff Gunn.

[¶ 15] Davis next went inside and talked with Bibb. Davis testified that Bibb told him that she had left the residence in the early morning hours and that upon returning, she entered the bedroom and saw Gunn engaged in sexual activity with a fifteen-year-old girl. After this conversation, Davis went back outside and talked with Gunn. Davis told Gunn that it was imperative that he go to the sheriff's office and speak with Davis about the sexual activity. Davis then asked Gunn to go back into the house with Deputy Walters and show him the underwear he had on at the time of the sexual encounter so that the underwear could be taken into physical evidence. Davis testified that Gunn voluntarily went in and complied with the request. Deputy Walters took Gunn to the sheriff's office, and Gunn admits he went voluntarily.

■■■ [¶ 16] Given the totality of the circumstances, we conclude that Gunn was not in police custody when questioned at his residence. He was questioned at home, a presumptively non-coercive environment; he was not detained against his will; he was not formally arrested; there was no restraint on his freedom of movement; only two officers were present during questioning at the residence; and the questioning lasted only ten to

fifteen minutes. Viewing these facts as a reasonable man in Gunn's position would have understood the situation, we conclude that any reasonable person would have felt at liberty to terminate the interview. Gunn testified that he agreed to talk with Davis outside because Davis was "the law." However, a reasonable person would not have considered the ensuing conversation in his front yard to be equivalent to a formal arrest or custody. Because Gunn was not in custody at the time of the questioning at his residence, no *Miranda* warnings were required.

[¶ 17] We further conclude that the statement made by Gunn at his home was made voluntarily. There is no indication in the record that the investigator or the deputy sheriffs were standing close to Gunn or intimidating him, that they were blocking his physical movements, or that they used violence, improper influence or other misconduct. No overt or implied threat was directed at Gunn, and Gunn appeared to be mentally and physically sound when he volunteered the statement. We agree with the district court that the statement made at Gunn's residence was voluntary.

### Statement at Sheriff's Office

[¶ 18] Gunn next argues that even though he was read his *Miranda* rights at the sheriff's office and signed a waiver of those rights before any questioning took place, "[s]atisfying *Miranda* does not resolve the question of voluntariness. A confession may be found involuntary because of the means used to obtain it." *Evans*, 944 P.2d at 1125. Because the law presumes a defendant's statements to be involuntary, the State has the burden to show, by a preponderance of the evidence, that Gunn's statements were voluntary. *Mitchell*, 982 P.2d at 721. In determining voluntariness, a court examines the totality of the circumstances that existed when the statements were made.

[¶ 19] After arriving at the sheriff's office, Davis and Gunn went to an interview room for a tape-recorded interview. Gunn initially provided his name, date of birth, Social Security number, address, and other background information. The following dialogue then took place:

[DAVIS:] ... Before I uh, talk to you about the incident this morning, I've already told you that if you'd come in here freely and voluntarily and speak with me today, that ir-regardless [sic] the results of it, I would take you back home, is that correct?

[GUNN:] Yeah.

[DAVIS:] Fully understand it?

[GUNN:] Yes sir.

[DAVIS:] Ok. And you understand that you're not under arrest?

[GUNN:] Yes sir.

[DAVIS:] Ok. With that having been said, I want to advise you of your rights. You have the right to remain silent. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask any questions and have him with you during questioning. If you cannot afford an attorney, one will be appointed for you before any questioning, if you wish. If you decide to answer questions now without a lawyer present, you will still have the right to stop answering any time. You will also have the right to stop answering anytime until you talk to a lawyer. Do you understand those?

[GUNN:] Yes sir.

[DAVIS:] Ok, what I'd like you to do then, if you would, sign that right there. Read that paragraph and sign that.

[GUNN:] Uh huh.

[DAVIS:] Ok. Acknowledge for the tape that he signed the waiver at uh, 9:15.

[¶ 20] The paragraph Gunn read and signed stated:

I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

[¶ 21] Davis wrote "Yes sir" in the left margin of the form next to the advisement of rights, to indicate Gunn's response after

Davis asked him if he understood his rights. As the interview continued, Gunn made incriminating statements. At the end of the interview, Davis turned the tape recorder off, and Deputy Frimml entered the room. Davis informed Gunn that the appropriate charge was going to be indecent liberties and not rape. Davis told Gunn that he had two options. He could either go to jail that day and try to get bond to secure his release or Davis could obtain an arrest warrant, which could take some time. Deputy Frimml testified that Gunn thought about this and decided to go to jail at that time. Deputy Frimml transported Gunn to jail and booked him for indecent liberties.

[¶ 22] Before leaving the interview room, Gunn became very upset because Davis had initially told him that no matter what happened that day, Davis would return him home. Davis told him that he had decided to go to jail, and that was where he was going. Gunn admitted at the hearing on the motion to suppress that he had been given the two options, but claimed that he really had no choice.

[¶ 23] The district court, in regard to the incriminating statements made at the sheriff's department, specifically found: (1) that the statements were made subsequent to *Miranda* warnings and that they were not involuntary; and (2) Davis promised Gunn that he could go home after the interview but, at the conclusion of the interview, Gunn surrendered his right to go home.

[¶ 24] Gunn argues that his statements at the sheriff's office in response to Davis' questioning were not voluntary, but he does not specify what made them involuntary. He claims that he was somehow coerced or tricked, after making the incriminating statements, into allowing himself to be arrested instead of being taken home. Gunn also asserts that he was tricked into waiving his rights and making the inculpatory statements by Davis' earlier promise that he could return home regardless of what he said. This argument is contrary to the testimony presented by Davis and corroborated by Deputy Frimml, that Gunn was given the chance to go home after the interview, but chose to be arrested at that time.

[¶ 25] This Court has stated that " '[i]nvoluntariness requires coercive state action, such as trickery, psychological pressure, or mistreatment.' " *Evans,* 944 P.2d at 1125 (*quoting Withrow v. Williams,* 507 U.S. 680, 708, 113 S.Ct. 1745, 1762, 123 L.Ed.2d 407 (1993), *cert. denied,* 510 U.S. 1073, 114 S.Ct. 882, 127 L.Ed.2d 77 (1994) (O'Connor, J., concurring)). Coercive government action is a necessary predicate to finding involuntariness within the due process clause of the Fourteenth Amendment. *Evans,* 944 P.2d at 1125. "Once the evidence establishes state actor coercion, a court must consider the effect of that coercion on the defendant's choice to confess or make an admission or statement." *Id.* at 1125–26. The use of misstatements or tricks in and of themselves does not render a confession or admission involuntary. *Id.* at 1126. Gunn points to no evidence in the record to support a showing of coercive government action. Gunn acknowledged that Davis read him his *Miranda* rights and that he waived those rights. There was no use of violence, threats, promises, improper behavior or official misconduct in regard to the interview, other than the promise that Gunn could go home, which Gunn voluntarily relinquished. We conclude that Gunn's statements during the custodial interview were made voluntarily.

## CONCLUSION

[¶ 26] Gunn was not in custody when questioned by an investigator at his home. Therefore, no *Miranda* warnings were required. Furthermore, the incriminating statements made at his home were made voluntarily, as were his statements at the sheriff's office after he was properly *Mirandized* and had waived his rights. We affirm the decision of the district court.