2005 WY 106

**In the Interest of CSC, a minor, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. C–04–12.

Supreme Court of Wyoming.

Aug. 30, 2005.

Representing Appellant: Ken Koski, State Public Defender; and Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Dee Morgan, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

KITE, Justice.

[¶ 1] CSC, a minor, appeals from the juvenile court's [1] order adjudging him guilty of aiding and abetting in the commission of first-degree sexual assault. CSC entered a conditional plea of guilty [2] to the charge, reserving his right to appeal the juvenile court's denial of his motion to suppress evidence. On appeal, CSC contests the denial of his suppression motion and contends that the juvenile court should not have accepted his guilty plea because it was not supported by a sufficient factual basis. Although CSC raises two interesting issues of constitutional magnitude, after a careful review of the record and the law pertaining to these issues, we conclude that the juvenile court did not err by accepting CSC's guilty plea or deny-

---

1. In accordance with Wyo. Stat. Ann. § 5–8–101 (LexisNexis 2003), the District Court for the Sixth Judicial District in Campbell County sat as the juvenile court in this matter.

2. In the context of a juvenile proceeding, the "conditional guilty plea" terminology is incorrect. Under the Juvenile Justice Act (sometimes

ing his motion to suppress. We, therefore, affirm.

## ISSUES

[¶ 2] CSC articulates the issues on appeal as follows:

I. Whether the district court erred when it found there was a factual basis for the crime of aiding and abetting first degree sexual assault.

II. Whether the district court erred when it denied appellant's motion to suppress statements.

The State offers a similar statement of the appellate issues:

I. Did the juvenile court err in accepting appellant's factual basis to support his delinquency adjudication for aiding and abetting first degree sexual assault?

II. Did the juvenile court abuse its discretion when it denied appellant's motion to suppress the statements he made to law enforcement officers at his high school?

## FACTS

[¶ 3] On February 20, 2004, 16–year–old CSC, his male friends (KM, CH, WD, and MJ), and the female victim (AA) decided to skip their classes at Campbell County High School in Gillette. They went to CSC's house and began drinking alcohol. AA became intoxicated, and KM and MJ helped her into the master bedroom, where KM and AA engaged in sexual intercourse.

[¶ 4] After KM and AA had been alone in the bedroom for approximately 20 minutes, KM came out and informed the others that AA had vomited on him. CSC and the others took AA to the shower and washed her off. They then put her in a clean bed, and CSC cleaned the soiled bedding. AA awoke later in the day, and MJ took her home. AA's

---

known as the Juvenile Court Act), which is codified at Wyo. Stat. Ann. §§ 14–6–201 (LexisNexis 2003), et seq., the juvenile either admits or denies the alleged delinquent conduct. Thus, the term "conditional admission" would be more accurate in this context.

uncle realized she was intoxicated and took her to the Gillette Police Department. The police transported her to the hospital, and medical tests confirmed that AA had consumed alcohol and engaged in sexual intercourse on that day.

[¶ 5]    On February 23, 2004, police officers went to the Gillette high school and requested that school officials call CSC to the office. CSC was directed to a large conference room where two investigators from the Campbell County Sheriff's Department, a Gillette police detective, a school resource officer, and a school official were gathered. Sheriff Department Investigator Tony Seeman questioned CSC about the events that occurred at CSC's home on February 20, 2004.

[¶ 6]    On February 27, 2004, CSC was arrested and charged with aiding and abetting in the commission of first-degree sexual assault. The statements he made during the February 23rd interview were important evidence against him. CSC denied the charge and filed a motion to suppress his statements. After a hearing, the juvenile court denied the motion.

[¶ 7]    CSC subsequently entered a conditional guilty plea, pursuant to W.R.Cr.P. 11(a)(2),[3] but reserved his right to appeal the juvenile court's denial of his motion to suppress. At his change of plea hearing, the juvenile court heard testimony from CSC and a statement from the prosecution about the events of February 20, 2004. The juvenile court concluded there was a sufficient factual basis for CSC's guilty plea and accepted it.

[¶ 8]    The juvenile court entered an order of disposition on July 15, 2004, sentencing CSC to the Wyoming Boys' School in Worland for an indefinite period of time not to exceed his twenty-first birthday. The court suspended that placement and placed him on probation for a term of not less than six (6) nor more than eighteen (18) months. CSC then filed a timely notice of appeal.

3.  Rule 11.  Pleas
    (a) *Alternatives.*—
        . . .
        (2) Conditional Pleas.—With the approval of the court and the consent of the attorney for the state, a defendant may enter a conditional

## DISCUSSION

### *Factual Basis*

[¶ 9] CSC claims the juvenile court erred when it found there was a sufficient factual basis for his plea of guilty to the crime of aiding and abetting in the commission of first-degree sexual assault. We review the procedure utilized to accept a guilty plea as a whole. *Van Haele v. State*, 2004 WY 59, ¶ 11, 90 P.3d 708, 711 (Wyo.2004). "Our inquiry determines if the [juvenile court] sufficiently described the nature of the charges, including the possible penalties; informed the defendant of the right to representation; informed the defendant of the rights waived by a guilty plea; and obtained a factual basis for the plea." *Mehring v. State*, 860 P.2d 1101, 1106 (Wyo.1993). See also, *Sami v. State*, 2004 WY 23, ¶ 9, 85 P.3d 1014, 1017 (Wyo.2004).

[¶ 10] W.R.Cr.P. 11(f) articulates the factual basis requirement for acceptance of a guilty plea. That rule states:

> *(f) Determining accuracy of plea.*—Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.

Rule 11 does not require proof beyond a reasonable doubt that a defendant is guilty or a complete description of the elements of the crime before the juvenile court may accept his guilty plea. *Sami*, ¶ 9. See also, *Van Haele*, ¶ 26. Instead, the court must determine whether: 1) the defendant's acts fell within the conduct prohibited by law and, 2) at the time of the guilty plea, the defendant understands his conduct was criminal. *Sami*, ¶ 9. See also, *Barnes v. State*, 951 P.2d 386, 389 (Wyo.1998).

[¶ 11] A sufficient factual basis for a guilty plea may be found in "the defendant's testimony and admissions and/or the state's presentation of evidence." *Sami*,

plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment to seek review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

[¶ 10.] The juvenile court may also "draw inferences from the defendant's admissions or the evidence presented by the state to satisfy all elements of the crime to which the defendant is pleading guilty." *Id.* (citing *Rude v. State,* 851 P.2d 15, 18 (Wyo.1993)). See also, *Van Haele,* ¶¶ 13, 26; *Anderson v. State,* 2002 WY 46, ¶ 32, 43 P.3d 108, 120 (Wyo.2002).

[¶ 12] CSC pled guilty to aiding and abetting in the commission of first-degree sexual assault, in violation of Wyo. Stat. Ann. §§ 6-1-201 and 6-2-302(a)(iii) (LexisNexis 2003). In order to be convicted of the crime, CSC must have: 1) aided, abetted, encouraged, hired, commanded or procured KM; 2) to inflict sexual intrusion upon AA, who was physically helpless; 3) while he knew or reasonably should have known that she was physically helpless; and 4) without AA's consent to the sexual intrusion. Sections 6-1-201, 6-2-302(a)(iii).

[¶ 13] At the change of plea hearing, CSC testified that he and his friends, including KM and AA, decided to skip school on February 20, 2004. They went to CSC's house, where they found some liquor, engaged in a "chugging contest", and watched television. CSC testified that, after the chugging contest, AA was acting "goofy" and "buzzed." The prosecutor stated that the other boys told police that AA was quite intoxicated after the chugging contest.

[¶ 14] CSC testified that AA stumbled into his mother's bedroom with KM and MJ's help. CSC saw KM start "messing with" AA and left them alone in the bedroom. CSC subsequently returned to the bedroom and witnessed KM kissing AA and removing her shirt and underwear. He testified that AA slapped KM's hand away and said "no" and "not yet." CSC was amused by KM's actions and testified that he knew that KM intended to have sexual intercourse with AA. KM asked CSC for a condom and CSC went outside to his truck to get one for him. Approximately 20 minutes later, KM came out of the bedroom and told the others that AA had vomited on him. CSC and the other boys carried AA to the shower and washed her. They toweled her off and placed her in a clean bed. CSC removed the soiled bedding from the master bed.

[¶ 15] It is clear that CSC aided, abetted, and/or encouraged KM to engage in sexual intercourse with AA. He knew that KM intended to have sexual intercourse with AA and provided KM with the condom and the place to accomplish the act. In addition, the record confirms that CSC knew or reasonably should have known that AA was physically helpless and did not consent to the sexual intrusion. He witnessed AA participate in the chugging contest and saw her stumble as she was being helped into the bedroom. The other boys indicated that AA was intoxicated when she went into the bedroom with KM. CSC saw KM remove AA's clothes, and there is no indication that AA assisted in, or consented to, removing her clothes. Moreover, CSC saw AA slap KM's hand away and say, "no" and "not yet" when KM was attempting to remove her underwear. CSC's testimony and the prosecution's statement, together with the juvenile court's reasonable inferences, were sufficient to satisfy the factual basis requirement of Rule 11(f). The juvenile court did not, therefore, err by accepting CSC's guilty plea.

### *Motion to Suppress*

[¶ 16] CSC claims the juvenile court erred when it denied his motion to suppress the statements he made during the interview in the school conference room. In particular, he claims that the police violated his constitutional rights by failing to apprise him of his rights in accordance with *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Our resolution of this issue turns on whether or not CSC was "in custody" when he was interviewed by the authorities.

[¶ 17] We review a juvenile court's legal ruling on a motion to suppress evidence *de novo,* giving deference to the trial court's findings of fact unless they are clearly erroneous. *Hannon v. State,* 2004 WY 8, ¶ 12, 84 P.3d 320, 328 (Wyo.2004); *Gunn v. State,* 2003 WY 24, ¶ 5, 64 P.3d 716, 719 (Wyo.2003). This Court considers the evidence in the light most favorable to the juvenile court's decision because that court is in the best position to "assess 'the credibility

of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions' at the hearing on the motion." *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d 1279, 1282 (Wyo.2002) (quoting *Frederick v. State*, 981 P.2d 494, 497 (Wyo.1999).

[¶ 18] Under *Miranda* and its progeny, a suspect must be informed of his constitutional rights, including the rights to remain silent and to have the advice of an attorney, if he is questioned while in custody. *Miranda*, 384 U.S. at 458, 86 S.Ct. 1602; *Dickerson v. United States*, 530 U.S. 428, 434, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (per curiam). See also, *Pena v. State*, 2004 WY 115, ¶ 7, 98 P.3d 857, 862 (Wyo.2004); *Hannon*, ¶¶ 40–41. When the authorities make the proper advisements, statements made by a suspect while in custody are admissible into evidence. *Gunn*, ¶ 7. The corollary of this rule is that "[s]tatements made during custodial interrogation must be excluded upon a showing that the defendant was not advised of his *Miranda* rights." *Id. See also, Dickerson*, 530 U.S. at 434, 120 S.Ct. 2326. Nevertheless, "this Court adheres to the principle that the rights recognized in *Miranda*, including the right to counsel, apply **only** in the context of custodial interrogation." *Hannon*, ¶ 41 (emphasis added). In *Miranda*, the United States Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602.

[¶ 19] The determination of whether a suspect is "in custody" when questioned is made by considering the totality of the circumstances of the interrogation. *Gunn*, ¶ 9; *Hannon*, ¶ 42. *See also*, J.F. Ghent, Annotation, *What Constitutes "Custodial Interrogation" Within Rule of Miranda v. Arizona Requiring that Suspect be Informed of His Federal Constitutional Rights Before Custodial Interrogation*, 31 A.L.R.3d 565, § 2[c] (1970). In resolving the custodial status of a suspect we consider "whether a reasonable man in [the suspect's] position would have considered himself to be in police custody." *Gunn*, ¶ 9 (quoting *Glass v. State*, 853 P.2d 972, 976 (Wyo.1993)). *See also, Yarborough v. Alvarado*, 541 U.S. 652, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). The United States Supreme Court more fully described the judicial query in *Thompson v. Keohane*, 516 U.S. 99, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (citations omitted):

"Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (internal quotation marks omitted).

[¶ 20] Many factors may be relevant in determining whether a suspect has been subjected to "custodial interrogation" within the meaning of *Miranda*.

Among these are: (1) whether a suspect is questioned in familiar or neutral surroundings; (2) the number of police officers present; (3) the degree of physical restraint and whether it is comparable to those associated with a formal arrest; and (4) the duration and character of the interrogation. *See* 2 Wayne R. LaFave, Jerold H. Israel and Nancy J. King, *Criminal Procedure* § 6.6(c) at 527 (2nd ed.1999); *see also Wunder [v. State]*, 705 P.2d [333], 335 [(Wyo.1985)]. The nature of the interrogator, the nature of the suspect, the time and place of the interrogation, the progress of the investigation at the time of the interrogation, whether the suspect is informed that his detention would not be temporary, and the elapsed amount of time between questioning and the arrest may be important factors as well. *Wunder*, 705 P.2d at 335; J.F. Ghent, Annotation, *What Constitutes "Custodial Interrogation" Within Rule of Miranda v. Arizona Requiring that Suspect be Informed of His Federal Constitutional Rights Before Cus-*

*todial Interrogation,* 31 A.L.R.3d 565 (1970). No one factor alone will necessarily establish custody for *Miranda* purposes, and not all factors will be relevant to a given case.

*Gunn,* ¶ 10. *See also, Hannon,* ¶ 42.

[¶ 21] The transcript of the motion to suppress hearing reveals the specifics of the interview in the instant case. School officials called CSC to the administrative offices of the Gillette high school on February 23, 2004. Prior to the interview, the school resource officer telephoned CSC's mother and informed her that the officers were interested in questioning CSC about an automobile accident that also occurred on February 20, 2004, and she consented to the interview.

[¶ 22] The interview took place in a school conference room, which had two doors. Two investigators from the Campbell County Sheriff's Department, a Gillette police detective, a uniformed school resource officer, and a school administrator attended CSC's interview. However, one officer, Investigator Seeman, conducted almost all of the questioning.

[¶ 23] Investigator Seeman was not threatening or coercive during the interview. He testified at the suppression hearing that he told CSC repeatedly during the interview that he did not have to talk to the officers, he was free to leave, and he was not under arrest. The interview lasted approximately one hour and, during that time, CSC was not handcuffed or otherwise physically restrained. Although the officers disputed his assertion, CSC testified that the resource officer sat in front of one of the doors, effectively blocking it. At the conclusion of the interview, the officers allowed CSC to leave the administrative office and return to class. Four days later, on February 27, 2004, CSC was arrested and charged with aiding and abetting in the commission of first-degree sexual assault.

[¶ 24] After hearing the evidence presented at the suppression hearing, the juvenile court judge made the following findings:

THE COURT: Well, the Court does have to in these situations look at the totality of the circumstances.

I'm going to find that this was a noncustodial interview. Now, it may have been a situation where the juvenile thought he had to be there, and at least initially he did. The school called him down.

On the other hand, some of the other indicia of custodial interrogation wasn't there. He wasn't taken to the police station. He wasn't taken to a holding cell. I mean, there may have been someone at the door. I guess that's not real clear in my mind from the testimony. But apparently there were two doors even. There were not restraints. And it is clear he was not arrested at the conclusion of that interview.

Even the juvenile testifies that he wasn't placed under arrest, that no one made any promises or tricks. Although, the tricks part is of no major consequence, but there were no promises made and he reports no threats. And the evidence would indicate that it was a nonthreatening atmosphere except for the extent that there were so many people present. But it appears that substantially all the questioning was done by one person.

And I guess I have to give credence to his testimony, too. I think it's believable that he says that he informed this juvenile that he was free to leave and didn't have to talk if he didn't want to.

So, I'm going to find that this was a noncustodial interrogation, that the statements therefore made by the juvenile during this time were voluntary and the motion to suppress should be denied.

[¶ 25] Taking the facts in the light most favorable to the juvenile court's findings, we conclude that those findings were not clearly erroneous. As in most cases where the determinative issue is whether or not a suspect was "in custody" when questioned, there are factors in this case weighing in favor of the conclusion that the encounter was custodial and factors which suggest that the encounter was noncustodial. The factors supporting a determination that CSC was "in custody" during the interview included the fact that CSC was initially directed to come to the office by school officials. In addition, an officer may have been blocking one of the

doors during the interview. CSC was outnumbered by authority figures, which suggests that the interrogation environment was somewhat coercive. Furthermore, CSC was a minor and was not accompanied by his mother or any other person who could provide him with moral support.

[¶ 26] On the other hand, any coercive elements of the interview were reduced by the fact that it took place at CSC's school, a location which was familiar to him, rather than at the police station. Investigator Seeman questioned CSC about a couple of different matters, including a car accident that occurred on February 20th [4] and the events that took place at his house that day. Viewing the evidence in the light most favorable to the State, it is certainly reasonable to infer that Investigator Seeman initially viewed CSC as simply a witness to KM's alleged sexual assault of AA. It was not until CSC made the incriminating statements regarding his conduct that he became a suspect himself.

[¶ 27] Furthermore, CSC was not handcuffed or otherwise physically restrained during the interview and at least one of the doors out of the conference room was unencumbered. Investigator Seeman's demeanor throughout the interview was calm and respectful and he repeatedly and specifically assured CSC that he was not obligated to answer any questions, could leave at any time, and would not be arrested that day. True to his word, Investigator Seeman allowed CSC to return to his class at the end of the interview, and he was not arrested until four days later. Considering the totality of the circumstances, we have to agree with the juvenile court that the interrogation of CSC was noncustodial.

[¶ 28] CSC contends that we should take his age into account in determining whether or not he was in custody at the time of the interrogation. In other words, he argues that we should analyze the custody issue "through a standard adapted for juveniles, namely, a reasonable person in the child's position." The Wyoming Supreme Court has never directly addressed whether a suspect's age should be considered in determining whether he was subjected to "custodial interrogation."

[¶ 29] Our analysis is guided by the United States Supreme Court's recent decision in *Yarborough*. In that case, the Supreme Court reviewed a decision from the United States Court of Appeals for the Ninth Circuit regarding Yarborough's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Ninth Circuit ruled that the state court erred by refusing to consider Yarborough's youth and inexperience when determining whether or not he was "in custody" at the time of questioning. *Yarborough*, 124 S.Ct. at 2147. The Supreme Court reversed the Ninth Circuit, ruling that federal law does not clearly mandate that a trial court consider a suspect's age or experience when making the determination of whether he was "in custody" for *Miranda* purposes. *Id.* at 2151.

[¶ 30] The United States Supreme Court emphasized the importance of applying an **objective** test to determine whether or not a suspect is in custody in order to further ' "the clarity of [Miranda's] rule' ensuring that the police need not 'guess as to [the circumstances] at issue before deciding how they may interrogate a suspect." ' *Yarborough*, 124 S.Ct. at 2151 (quoting *Berkemer v. McCarty*, 468 U.S. 420, 430, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984)). In other words, the test should not " 'place upon the police the burden of anticipating the frailties or idiosyncrasies of every person whom they question.' " *Id.* at 2148 (quoting *Berkemer*, 468 U.S. at 442 n. 35, 104 S.Ct. 3138, which quoted *"People v. P.*, 21 N.Y.2d 1, 9–10, 286 N.Y.S.2d 225, 233 N.E.2d 255, 260 (1967))".

[¶ 31] We cannot overstate the importance of having an objective test to guide the police in determining a suspect's custodial status. The police should not have to "get into" the mind of the suspect in order to determine if they are required to give *Miranda* warnings before questioning him. *Yarborough*, 124 S.Ct. at 2148–49. It would be a great handicap to law enforcement to

---

4. The authorities ultimately determined that CSC was not involved in the automobile accident that occurred on February 20, 2004.

require them to speculate about the suspect's state of mind before deciding how they may interrogate him.

[¶ 32] Consequently, we are not compelled to alter our traditional objective test for determining a suspect's custodial status in order to take into account CSC's age. Since he was 16 years old, CSC was not exceptionally young at the time of the interview. Furthermore, he was told several times by Investigator Seeman that he did not have to answer his questions, could leave at any time, and was not under arrest.

[¶ 33] We do note that *Yarborough* was a five to four decision, with Justice Kennedy writing for the narrow majority. Justice O'Connor, who joined in the majority decision, also wrote a separate concurring opinion. She specifically stated that "[t]here may be cases in which a suspect's age will be relevant to the *Miranda* 'custody' inquiry." *Yarborough*, 124 S.Ct. at 2152. Justice O'Connor stated, however, that since Yarborough was near the age of majority when he was questioned, the trial court was not obligated to consider his age and experience in determining his custodial status. *Id.*

[¶ 34] Following Justice O'Connor's reasoning, we acknowledge that there could be instances where the suspect is so young that his age must be considered by the police. We do not, however, feel that it applies to 16–year–old CSC in this case, especially in light of the fact that he was repeatedly advised by Investigator Seeman that he was not under arrest, was not obligated to answer his questions, and could leave at any time. The juvenile court, therefore, correctly applied the objective test to determine whether CSC was in custody and properly concluded that the interview was noncustodial.

[¶ 35] There are, of course, legal contexts in which a suspect's subjective state of mind is relevant. "For example, the voluntariness of a statement is often said to depend upon whether 'the defendant's will was overborne,' *Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963), a question that logically can depend on 'the characteristics of the accused.' *Schneckloth v. Bustamonte*, 412 U.S. 218, 226, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)." *Yarborough*, 124 S.Ct.

at 2151. See also, *Hannon*, ¶¶ 50–51. CSC does not, however, raise any issues requiring a subjective analysis of his individual characteristics. In particular, he did not claim that his statements were coerced or that his will was overborne by the police during the interview.

[¶ 36] The juvenile court properly applied the objective test to determine CSC's custodial status during the interview and correctly concluded that he was not in custody. Consequently, CSC's constitutional rights were not violated by the authorities' failure to apprise him of his *Miranda* rights before questioning him and the juvenile court did not err by refusing to suppress his statements.

[¶ 37] Affirmed.