2007 WY 52

Christopher A. **DOOLITTLE,**
Appellant (Defendant),

v.

The **STATE** of Wyoming,
Appellee (Plaintiff).

Nos. 05–177 and 06–86.

Supreme Court of Wyoming.

March 23, 2007.

---

Representing Appellant (05–177): Ken Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel. Argument by Ms. Domonkos.

* Chief Justice at time of oral argument.

Representing Appellee (05–177): Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; David J. Willms, Assistant Attorney General. Argument by Mr. Willms.

Representing Appellant (06–86): Christopher A. Doolittle, pro se.

Representing Appellee (06–86): Patrick J. Crank, Attorney General; Paul Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Leda M. Pojman, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Mr. Doolittle was suspected of dealing methamphetamine in the Cheyenne area. Pursuant to a sting operation, an informant asked Mr. Doolittle to meet at a nightclub near the Wyoming/Colorado border. When Mr. Doolittle arrived, he crossed into Wyoming, but parked his vehicle on the Colorado side of the border. Wyoming law enforcement officers immediately arrested him for conspiracy to deliver methamphetamine. A search of his vehicle led to the discovery of drugs, drug dealing paraphernalia, and several weapons. Mr. Doolittle filed a motion to suppress evidence obtained during the search, claiming the officers were outside of their jurisdiction to arrest him, or alternatively, that they lacked probable cause. The district court denied the motion. Subsequently, Mr. Doolittle entered a conditional guilty plea to one count of possession of a controlled substance with intent to deliver and one count of felony possession of a controlled substance. In these two consolidated appeals, he contends the district court erred by denying his motion to suppress and by failing to award him credit for time served. We affirm the district court's decision to deny the motion to suppress. We remand the case to the district court for entry of a corrected judgment and sentence.

## ISSUES

[¶ 2] The issues for review on appeal are:

I. Whether the district court erred when it denied Mr. Doolittle's motion to suppress.

II. Whether the district court erred because it did not award credit for time served.

## FACTS

[¶ 3] In the morning hours of April 16, 2004, detectives from the Cheyenne Police Department and special agents of the Wyoming Division of Criminal Investigation (collectively "detectives") arrested Michael Collins, who admitted to dealing methamphetamine in the Cheyenne area. Mr. Collins advised the detectives that Mr. Doolittle was his supplier. He explained to the detectives that Mr. Doolittle would front the drugs without requiring prepayment. After the drugs were sold, they would meet to exchange money and more drugs. At the detectives' request, Mr. Collins agreed to cooperate in a sting operation for the apprehension of Mr. Doolittle.

[¶ 4] At approximately 1:30 p.m. that same day, Mr. Collins made a series of recorded phone calls to Mr. Doolittle in an attempt to set up a meeting to pay Mr. Doolittle for drugs he previously advanced to Mr. Collins and to replenish Mr. Collins' supply of methamphetamine. The phone calls were made in the presence of the detectives and the detectives recorded, and listened to, the phone calls as they occurred. Mr. Doolittle stated he was in Colorado but would drive to Wyoming within a matter of hours to make the exchange. Mr. Doolittle agreed to meet in the parking lot of a nightclub near the Wyoming/Colorado border. Mr. Collins informed the police that Mr. Doolittle would be driving a two-door Oldsmobile Achieva and that he would be carrying a handgun in his waistband or in his vehicle. The detectives intended to arrest Mr. Doolittle for the ongoing drug distribution conspiracy upon his arrival.

[¶ 5] At approximately 3:00 p.m., the Oldsmobile Achieva arrived near the meeting place. After crossing into Wyoming, the vehicle continued up a driveway that curved back into the parking lot of the Colorado Lottery Outlet located behind the nightclub. The vehicle stopped on the Colorado side of the Wyoming/Colorado border. As Mr. Doolittle stepped out of the vehicle, detectives arrested him for conspiracy to deliver methamphetamine.

[¶ 6] Detectives searched Mr. Doolittle and his vehicle incident to the arrest. The search uncovered pipes used for smoking methamphetamine, approximately one-half ounce of methamphetamine (a street value of $1,400.00), a digital scale commonly used to weigh illicit drugs, packing material consistent with illicit drug sales, a handgun under the front seat, and other items related to drug sales.[1] After being advised of his *Miranda* rights, Mr. Doolittle admitted he had been dealing methamphetamine to Mr. Collins for re-sale in Wyoming and admitted ownership of the weapons. A later search of his Wyoming residence, pursuant to his consent, uncovered more drug dealing paraphernalia, methamphetamine, and ammunition.

[¶ 7] A criminal Information was filed on April 29, 2004, charging Mr. Doolittle with one count of felony possession with intent to deliver a controlled substance and one count of felony possession of a controlled substance in violation of Wyo. Stat. Ann. §§ 35–7–1031(a)(i) and 35–7–1031(c)(ii). The Information further alleged that these charges were subject to sentencing enhancement due to the use of a firearm. Mr. Doolittle pled not guilty to the charges. He filed a motion to suppress the evidence obtained during his arrest. He claimed the arrest was unlawful because the detectives did not have jurisdiction to arrest him in Colorado. The motion to suppress was denied. Pursuant to a plea agreement, Mr. Doolittle changed his plea to no contest on both counts. He reserved his right to appeal the district court's ruling on the motion to suppress. The State consented to the conditional plea and agreed to recommend a sentence of ten to twelve years.

[¶ 8] Mr. Doolittle was sentenced on April 22, 2005, to the Wyoming State Peni-

1. An inventory search revealed more handguns located in a safe in the trunk of the car.

tentiary for a single term of not less than seven years nor more than twelve years. Mr. Doolittle appealed from the judgment and sentence. Thereafter, Mr. Doolittle, acting *pro se*, petitioned the district court seeking a corrected sentence. Mr. Doolittle claimed the district court failed to award him credit for his presentence incarceration. The motion was denied resulting in another appeal. We subsequently entered an order consolidating both appeals.

## STANDARD OF REVIEW

[¶ 9] Our review of a district court's ruling on a motion to suppress is guided by the following:

> [W]e do not interfere with the [district court's] findings of fact unless they are clearly erroneous. When the district court has not made specific findings of fact, we will uphold its general ruling if the ruling is supportable by any reasonable view of the evidence. We consider the evidence in the light most favorable to the district court's ruling because of the district court's ability to assess the credibility of the witnesses, weigh the evidence, and make the necessary inferences, deductions, and conclusions at the hearing on the motion.

*Gunn v. State*, 2003 WY 24, ¶ 5, 64 P.3d 716, 719 (Wyo.2003) (quoting *Meek v. State*, 2002 WY 1, ¶ 8, 37 P.3d 1279, 1282 (Wyo.2002) (quotation marks omitted)). "The determination of whether a sentence is illegal is a question of law, which we review *de novo*." *Manes v. State*, 2007 WY 6, ¶ 7, 150 P.3d 179, 181 (Wyo.2007).

## DISCUSSION

[¶ 10] Mr. Doolittle asserts two errors for our review pursuant to his appeals. First, he claims the district court erred by denying his motion to suppress because the evidence was obtained pursuant to a search incident to an unlawful arrest. If we disagree with Mr. Doolittle's first assignment of error, he contends that the district court erred by denying his motion to correct an illegal sentence.

## Extraterritorial Arrest

[¶ 11] Mr. Doolittle contends that his arrest was unlawful because Wyoming law enforcement officers were not legally authorized to arrest him in Colorado. He claims that the detectives were not in fresh pursuit. Mr. Doolittle also argues that the detectives lacked probable cause to arrest him because they did not make any personal observations of the conspiracy other than seeing Mr. Doolittle's vehicle cross the Wyoming state line. As a result of the unlawful arrest, Mr. Doolittle asserts that all items obtained from the search should have been excluded from evidence.

[¶ 12] The validity of a warrantless arrest is determined by applying the law of the state in which the arrest occurred. *Six Feathers v. State*, 611 P.2d 857, 861 (Wyo.1980) (citing *United States v. Morris*, 445 F.2d 1233 (8th Cir.1971), *cert. denied*, 404 U.S. 957, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971); *State v. Coleman*, 177 Mont. 1, 579 P.2d 732 (1978)). It is undisputed that the arrest occurred in Colorado. Colorado's statute on the subject provides that an officer may cross boundary lines "when the offense was committed in the officer's presence or the officer has reasonable grounds to believe that the alleged offender has committed a criminal offense." Colo.Rev.Stat. Ann. § 16–3–106 (West 2005). Colorado has interpreted "reasonable grounds" to mean probable cause. *People v. McKay*, 10 P.3d 704, 706 (Colo.Ct.App.2000). "Probable cause to arrest exists when, under the totality of the circumstances, the objective facts and circumstances warrant the belief by a reasonable and prudent person, in light of that person's training and experience, that an offense has been committed and that the defendant committed it." *Id. See also Mascarenas v. State*, 2003 WY 124, ¶ 10, 76 P.3d 1258, 1261 (Wyo.2003) (defining probable cause as "the facts and circumstances within the peace officer's knowledge and of which he had reasonably trustworthy information ... sufficient to warrant a reasonably cautious or prudent man to believe that the person arrested has committed ... an offense") (emphasis omitted).

**[¶ 13]** After holding a hearing on the motion to suppress, the district court determined probable cause existed for the warrantless arrest of Mr. Doolittle. Pursuant to an ongoing investigation of methamphetamine trafficking in the city of Cheyenne, detectives arrested Mr. Collins who readily provided the name of Mr. Doolittle as the individual responsible for supplying him with methamphetamine for distribution in Wyoming. Upon learning this information, detectives listened to, and recorded, a telephone conversation between Mr. Doolittle and Mr. Collins wherein they agreed to meet so that Mr. Doolittle could retrieve the proceeds owed to him for a prior delivery of methamphetamine and replenish Mr. Collins' drug supply. Mr. Collins also provided the detectives with information concerning the make and model of Mr. Doolittle's vehicle and advised them that Mr. Doolittle would be armed with a weapon.

**[¶ 14]** We find no error with the district court's determination. Based upon the information discussed above, the detectives could reasonably conclude that Mr. Doolittle previously conspired to deliver drugs to Mr. Collins for distribution in Wyoming, and was entering Wyoming with the intent to continue that conspiracy.[2] The telephone call making arrangements to exchange proceeds from a prior drug sale for more drugs was made in the presence of the detectives. By crossing into Wyoming at the time and place agreed upon, Mr. Doolittle's actions constituted an overt act committed in Wyoming in furtherance of the ongoing conspiracy.

**[¶ 15]** Mr. Doolittle faults the detectives for making the arrest outside of their jurisdiction and contends that this requires suppression of all evidence obtained as a result of his arrest. He relies on the general rule that law enforcement officers are not permitted to make warrantless arrests outside of the territorial limits of their jurisdiction absent statutory authority. *See, e.g.,* 5

Am.Jur.2d *Arrest* § 69 (1995). Although Mr. Doolittle recognizes that fresh pursuit is an exception to the prohibition on extraterritorial arrests, he claims that the detectives were not in fresh pursuit. Mr. Doolittle contends that the detectives' action of lying in wait for his arrival does not qualify as fresh pursuit. He claims that he was unaware that he was being pursued and he was not fleeing from Wyoming's jurisdiction. He further claims that a chase did not begin in Wyoming as required for the fresh pursuit doctrine to apply.

**[¶ 16]** If we were analyzing Mr. Doolittle's claim under the common law doctrine of fresh pursuit, his argument might have some merit. *See, e.g.,* 5 Am.Jur.2d *Arrest* § 72 (1995) (stating that the common law requires an officer to begin the chase in his or her own jurisdiction and continue until the suspect is caught); *State v. Goff,* 174 Neb. 548, 118 N.W.2d 625, 630 (1962) (emphasizing that individual sought must be attempting to escape or fleeing to avoid an arrest), *overruled on other grounds by State v. Fletcher,* 221 Neb. 562, 378 N.W.2d 859, 861–62 (1985). However, Colorado has enlarged upon the common law pursuant to its codification of Colo.Rev.Stat. Ann. § 16–3–104(1)(c) (West 2005), which defines fresh pursuit as "the pursuit without unnecessary delay of a person who has committed a crime or who is reasonably believed to have committed a crime." Whether an arrest is valid under the "fresh pursuit" doctrine is evaluated in Colorado by considering three criteria: (1) the police must act without unnecessary delay; (2) the pursuit must be continuous and uninterrupted, but there need not be continuous surveillance of the suspect or uninterrupted knowledge of his whereabouts; and (3) the temporal relationship between the commission of the offense, the commencement of the pursuit, and the apprehension of the suspect—the greater the length of time, the less likely the police action consti-

---

**2.** Mr. Doolittle also claims that probable cause did not exist for his arrest because a defendant cannot conspire to deliver a controlled substance with a state agent. He relies on *Palato v. State,* 988 P.2d 512 (Wyo.1999), to support his position. Mr. Doolittle's claim is without merit. Mr. Collins implicated Mr. Doolittle in an ongoing conspiracy that began long before Mr. Collins became a state agent. The theory was then corroborated by the telephone call between Mr. Collins and Mr. Doolittle when Mr. Doolittle agreed to meet Mr. Collins to obtain his profits from a previous sale of methamphetamine and to replenish Mr. Collins' drug supply.

tuted fresh pursuit. *Charnes v. Arnold*, 198 Colo. 362, 600 P.2d 64, 66 (1979). There is no requirement that the suspect recognize he is being pursued. *Six Feathers*, 611 P.2d at 861. There is also no requirement that "an actual in-sight chase" begin within the officer's territorial jurisdiction. *State v. Green*, 257 Kan. 444, 901 P.2d 1350, 1356–1357 (1995) (relying on *Charnes*, 600 P.2d 64).

[¶ 17] Admittedly, the facts of the present case do not fit easily within the traditional sense of fresh pursuit where it is envisioned that an officer observes a crime and immediately begins chasing a fleeing suspect across a jurisdictional boundary line. However, when evaluated under the criteria set forth under Colorado law, we do not find Mr. Doolittle's arrest to be unlawful. Detectives immediately set up surveillance at the location where Mr. Doolittle agreed to meet Mr. Collins in furtherance of the ongoing conspiracy. Mr. Doolittle arrived as expected, but after driving into Wyoming, continued on a driveway which curved back over to the Colorado side of the border. The detectives followed Mr. Doolittle's vehicle across the border and apprehended him after he stepped out of the car. The police action in this case was without unnecessary delay and was continuous and uninterrupted. Mr. Doolittle was apprehended as close to the time the crime was committed as was reasonable under the circumstances. We find Mr. Doolittle's arrest was lawful.[3]

### *Credit for Time Served*

[¶ 18] In both of these appeals, Mr. Doolittle contends that the district court erred by denying him credit for his presentence incarceration. We recently stated that "[a] defendant is entitled to credit for time spent in presentence confinement, against both the minimum and maximum sentence, if the defendant was unable to post bond for the offense of which he was convicted." *Manes*, ¶ 8, 150 P.3d at 181. A sentence which does not include proper credit for presentence incarceration is illegal. *Id.*, citing *Gomez v. State*, 2004 WY 15, ¶ 18, 85 P.3d 417, 421 (Wyo.2004).

[¶ 19] At sentencing, the district court discussed the imposition of Mr. Doolittle's sentence as follows:

You're hereby imposed—the Court hereby imposes a sentence [of] not less than 7 years no more than 12 years. That 7 years is arrived at in view of, among other factors, of the length of time in which you've been incarcerated here. So the Court has considered that in imposition of the sentence.

You won't be entitled to that time. If you hadn't done that time, your sentence would have been 8 to 12, but in view of that term of incarceration, it seems to me that 7 to 12—the 12 is a somewhat higher number than customarily in a case like this, but I think it's necessary....

No further findings were made concerning the time Mr. Doolittle was incarcerated prior to his sentencing. The written judgment and sentence omits any discussion regarding credit for presentence incarceration even though required to do so pursuant to W.R.Cr.P. 32(c)(2)(E) and (F), which provides:

(c) Sentence.

. . .

(2) Contents.—A written sentence shall be signed by the judge and entered by the clerk of court without delay. The sentence may be included in the judgment or separately entered. Except for forfeit offenses for which citations have issued, other misdemeanors where the penalty imposed does not exceed a fine of $200.00, and pleas entered under Rule 43(c)(2), as a minimum the sentence shall:

. . .

---

3. Alternatively, the State contends Mr. Doolittle's arrest was lawful pursuant to the interstate compact, Colo.Rev.Stat. Ann. § 24–60–203 (West 2005), which states:

(1) It shall be competent for any member of a duly organized state, county or municipal peace unit of a state, party to this compact, to enter any and all other states, parties to this compact, without interference:
(a) While in pursuit of any person who has committed a felony in said state . . .
Because this alternative was not presented to the district court, we decline to address it for purposes of this appeal.

(E) Include a finding of all time served by the defendant in presentence confinement for any sentenced offense;

(F) State the extent to which credit for presentence confinement is to be given for each sentenced offense;

Because the written sentencing order failed to comply with our rules of criminal procedure, Mr. Doolittle is entitled to a limited remand for a determination of credit unless we are able to fashion a correct award from the record. *Eustice v. State*, 871 P.2d 682, 685 (Wyo.1994).

[¶ 20] In its appellate brief, the State contends that a remand is unnecessary because a correct award can be fashioned from the record. The State proposes that we adjust Mr. Doolittle's sentence so that 371 days are credited against both the minimum and maximum terms of the eight to twelve year sentence mentioned by the district court. Mr. Doolittle contends that credit should be applied against the seven to twelve year sentence. The district court's oral pronouncement is ambiguous regarding whether Mr. Doolittle is entitled to receive any credit for his presentence incarceration and the written judgment and sentence lacks any findings which would provide clarification. As a matter of law, we are unable to determine the sentence intended to be imposed by the district court. We remand this case to the district court for entry of a corrected sentence.

## CONCLUSION

[¶ 21] We affirm the district court's decision to deny Mr. Doolittle's motion to suppress. However, the written judgment and sentence does not comply with the requirements of W.R.Cr.P. 32(c)(2)(E) and (F) because it lacks any specific findings concerning Mr. Doolittle's presentence incarceration. This case is remanded to the district court for issuance of a corrected sentence consistent with this opinion.